**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ERNEST MATTHEWS,** | ) | **CASE NO.  1:05 CR 204** |
| | ) | **1:09 CV 2421** |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **JUDGE PETER C. ECONOMUS** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | **MEMORANDUM OPINION** |
| Respondent. | ) | **AND ORDER** |
| | ) | |

The instant matter is before the Court on Petitioner Ernest Matthews' ("Matthews" or "Petitioner") Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion"). (Dkt. # 237). In said Motion, Petitioner claims to have received ineffective assistance of trial and appellate counsel, and requests an evidentiary hearing. For the reasons that follow, Petitioner's § 2255 Motion is **DENIED**. (Dkt. # 237).

## I. PROCEDURAL HISTORY

### A. Factual History

On March 26, 2005, Easter Sunday, a flat-bed semi-tractor trailer driven by Arnulfo Quintana was stopped in Kansas by the Kansas State Highway Patrol, and 39 bales of marijuana were discovered in the trailer. (Dkt. # 185 at 4). Quintana became a cooperating witness, and continued driving the truck to his alleged destination in Cleveland, accompanied by law enforcement. Quintana testified that during a meeting in Tucson, Arizona, in mid-March 2005, he met with an individual named Martin Guzman

1

and Matthews, and that at that meeting, Quintana agreed to deliver marijuana to Cleveland in exchange for $25,000.  (Dkt. # 185 at 15-17).

After Quintana's trailer was stopped in Kansas, the Kansas authorities contacted Special Agent ("SA") William Leppla, who then conducted surveillance at a car wash in Warrensville Heights, Ohio, the destination for the marijuana delivery.  Leppla testified that at approximately 6:30 pm on March 27, 2005, he saw two vehicles, a black Chevrolet Trailblazer and a black/grey Chevrolet Suburban, enter the car wash.  Two black men got out of the vehicles and walked around, then departed after approximately ten minutes. (Dkt. # 244 at 5).

Quintana arrived at the car wash at approximately 7:10 pm, and pulled into the garage.  Five to ten minutes later, Matthews and Edward Jackson arrived in the same vehicles previously seen, exited the vehicles, and engaged in a conversation with Quintana.  At that point, SA Leppla, concerned for the officers' safety, initiated an arrest of Defendants.  (Dkt. # 244 at 6).  Officers discovered $3,235.00 in U.S. currency on Matthews' person, as well as $500.00 on the ground near him.  Additionally, a black duffle bag, three boxes of gallon size Glad-zipper bags, and three rolls of contact paper were found in the Chevrolet Trailblazer driven by Jackson.  (Dkt. # 244 at 7).

Jackson's defense at trial was that Quintana had visited Jackson's car wash earlier in March 2005, and then falsely gave the authorities his address as the location to which he was delivering the marijuana.  Matthews' defense at trial was that he was helping Jackson inspect motorcycle parts at the car wash on March 27, 2005, and knew nothing of the marijuana delivery.

Quintana testified that he had been in Cleveland previously in January 2005, but denied being in Cleveland in February or March 2005. (Dkt. # 185 at 17). However, evidence became known, and was the subject of a motion for a new trial, that showed Quintana had been in Cleveland March 13-15, 2005. This Court denied the Motion for a New Trial, finding that the new evidence was only cumulatively impeaching of Quintana because his credibility had already been fatally damaged. (Dkt. # 185 at 37). The Sixth Circuit affirmed Matthews' conviction, as well as the Court's denial of his Motion for New Trial, on November 20, 2008. United States v. Matthews, 298 F. App'x 460 (6th Cir. 2008). The Supreme Court of the United States denied Matthews' petition for a writ of certiorari on March 4, 2009. Matthews v. United States, 129 S.Ct. 1386 (2009).

**B. Procedural History**

The government filed a criminal complaint against Matthews on March 28, 2005. (Dkt. # 1). On April 27, 2005, Matthews was indicted on one count of conspiracy to possess with intent to distribute and to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B). (Dkt. # 12). Matthews filed a Motion to Dismiss the Complaint and Order Defendant Released, (Dkt. # 11), which was denied on May 13, 2005, (Dkt. # 20). The grand jury issued a Superseding Indictment on June 14, 2005, charging Matthews with one count of attempting to possess with intent to distribute marijuana. (Dkt. # 54).

On August 4, 2005, the Court denied Matthews' Motions to Suppress Statements, (Dkt. # 47), and Motion to Suppress Evidence, (Dkt. # 49). (Dkt. # 72). After a jury trial, Matthews was found guilty on Count 1 of the Superseding Indictment, and a judgment was entered. (Dkts. # 108, 110). Matthews filed a Motion for a New Trial, on

3

which the Court held a hearing on May 31, 2006. Matthews' Motion to Set Aside Verdict and Enter Judgment of Acquittal and/or Motion for New Trial, (Dkt. # 117), Second Motion for New Trial, (Dkt# 139), and Motion for Acquittal (Dkt. # 165), were denied on October 23, 2006. (Dkt. # 185). On January 17, 2007, the Court sentenced Matthews to 120 months imprisonment followed by eight years supervised release. (Dkt. # 196).

Matthews filed the instant Motion to Vacate on October 19, 2009. (Dkt. # 237). The government filed a Response on March 12, 2010, (Dkt. # 244), and Matthews filed a Reply on March 26, 2010, (Dkt. # 246).

## II. STANDARD OF REVIEW

A petitioner who moves to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255 must allege: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentences is otherwise subject to collateral attack. 28 U.S.C. § 2255; Waller v. United States, No. 1:08-CV-936, 2010 U.S. Dist. LEXIS 17269, at *12 (N.D. Ohio Feb. 26, 2010).

A federal district court may grant relief to a prisoner in custody only if the petitioner can "demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." Griffin v. United States, 330 F.3d 733, 736 (6th Cir. 2003). The petitioner must "show a fundamental defect in the proceedings which necessarily results in a complete

4

miscarriage of justice or an egregious error violative of due process." Moore v. United States, 649 F. Supp. 2d 689, 694 (N.D. Ohio 2009) (quoting Gall v. United States, 21 F.3d 107, 109 (6th Cir. 1994)).

Furthermore, § 2255 requires a district court to "grant a prompt hearing" when such a motion is filed, and to "determine the issues and make findings of fact and conclusions of law with respect thereto" unless "the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief." Green v. United States, 445 F.2d 847, 848 (6th Cir. 1971); Bryan v. United States, 721 F.2d 572, 577 (6th Cir. 1983).

### III. LAW AND ANALYSIS

#### A. Ineffective Assistance of Appellate Counsel

Petitioner first argues that appellate counsel was ineffective for failing to raise certain meritorious claims on appeal. Specifically, Petitioner asserts that appellate counsel should have appealed the denial of his Motion to Suppress Statements, as well as the alleged prosecutorial misconduct that Petitioner claims occurred during closing arguments.

Claims of ineffective assistance of appellate counsel are governed by the analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). Haliym v. Mitchell, 492 F.3d 680, 694 (6th Cir. 2007). The Supreme Court in Strickland devised a two-part inquiry for claims of ineffective assistance of counsel. Under the Strickland test, Petitioner must show (1) that counsel's representation fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that but for counsel's unprofessional errors,

5

the result of the proceeding would have been different. Id. at 688-94. Thus, Petitioner must demonstrate both deficient performance and prejudice in order to succeed on his claim. Id. at 686. In analyzing a claim of ineffective assistance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.

Petitioner claims that appellate counsel failed to raise certain specific arguments on appeal. Because appellate counsel is not required to raise every non-frivolous issue on appeal, Jones v. Barnes, 463 U.S. 745, 750-54 (1983), Petitioner's counsel would not be deemed ineffective unless the omitted arguments were clearly stronger than those counsel did present. Coleman v. Mitchell, 268 F.3d 417, 430 (6th Cir. 2001) (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986)). Typically, tactical decisions as to which issues should be addressed on appeal are properly left to the sound professional judgment of counsel. United States v. Perry, 908 F.2d 56, 59 (6th Cir. 1990).

### *1. Suppression of Statements*

Petitioner argues that his counsel was ineffective on appeal for failing to appeal the trial court's denial of a motion to suppress statements made to Detective Ansari. The motion concerned incriminating statements Petitioner made to Detective Ansari during transport from the local jail to the United States Marshal's Office.

In analyzing whether counsel was ineffective on appeal for failing to raise a particular issue, the Court must first assess the strength of the claim and determine whether there is a reasonable probability that inclusion of the issue would have changed the result of the appeal. Valentine v. United States, 488 F.3d 325, 338 (6th Cir. 2007). A

reasonable probability "does not mean a certainty, or even a preponderant likelihood of a different outcome." Matthews v. Abramajtys, 319 F.3d 780, 790 (6th Cir. 2003). Nevertheless, conclusory allegations that an issue would have merit on appeal are not sufficient to show ineffective assistance of counsel. Workman v. Bell, 178 F.3d 759, 771 (6th Cir. 1998).

Petitioner asserts that his appellate counsel should have appealed the trial court's decision not to suppress the statements that he made to Detective Ansari. In ruling on Petitioner's Motion to Suppress Statements, the Court determined that Petitioner was advised of his Miranda rights, and that there were no changed circumstances which required him to be Re-Mirandized. (Dkt. # 244 at 15). The trial court's denial of a motion to suppress must be "clearly erroneous" for an appellate court to overturn the decision. See United States v. Breen, 419 F.2d 806, 807 (6th Cir. 1969). Petitioner does not make a credible argument that the district court would likely have been reversed on appeal were the issue raised, and instead merely reargues the merits of the claim for suppression. Therefore, Petitioner has failed to demonstrate that his counsel was deficient for failing to appeal the district court's ruling on his Motion to Suppress Statements.

### *2. Prosecutorial Misconduct*

Petitioner next argues that his appellate counsel was ineffective for failing to argue on appeal that the prosecution "exceeded the boundaries of proper argument during closing argument to the jury." (Dkt. # 237 at 18). As noted above, the Court must assess the strength of the underlying claim.

7

When giving closing arguments, the prosecutor may not inject improper or prejudicial material that deprives the accused of his right to a fair trial.  United States v. Solivan, 937 F.2d 1146, 1151 (6th Cir. 1991).  The prosecutor is not merely another advocate; he or she has a duty to refrain from improper methods used to wrongfully convict in addition to his duty to use every legitimate means to bring about a just conviction.  Gravley v. Mills, 87 F.3d 779, 789 (6th Cir. 1996).  Statements are improper if they express to the jury the prosecutor's personal knowledge of the guilt of the accused, vouch for the credibility of witnesses, or bring to the jury's attention facts that are not in evidence.  United States v. Emuegbunam, 268 F.3d 377, 404 (6th Cir. 2001).

However, prosecutorial misconduct cannot support the grant of a new trial unless it "permeated the entire atmosphere of the trial."  United States v. Bond, 22 F.3d 662, 667 (6th Cir. 1994) (internal citations omitted).  Additionally, an admonition to the jury by the trial court indicating that the lawyer's arguments do not constitute evidence is generally sufficient to cure any improprieties in closing argument.  Emuegbunam, 268 F.3d at 406; Bond, 22 F.3d at 670.

In United States v. Carroll, 26 F.3d 1380 (6th Cir. 1994), the Sixth Circuit clarified the test to be used in determining whether a prosecutor committed misconduct in closing argument.  First, the court determines "whether a prosecutor's remarks were improper."  Id. at 1385.  If the remarks were improper, the court must determine whether they were flagrant, using four factors: (1) whether the statements tended to mislead the jury or prejudice the accused, (2) whether they were isolated or extensive, (3) whether they were deliberately or accidentally placed before the jury, and (4) the overall strength

of the evidence against the accused. Id. If the prosecutor's statements were not flagrant, a new trial is only warranted if: (1) proof of the defendant's guilt is not overwhelming, and (2) defense counsel objected, and (3) the trial court failed to cure the error with an admonishment to the jury. Id. at 1385-86.

In the instant matter, Petitioner argues that the attorney for the government vouched for Quintana, a key witness, by stating, "you should believe him because he was brutally honest." (Dkt. # 237 at 19). Additionally, Petitioner claims that the prosecutor indicated to the jury that Quintana would not receive a benefit for his testimony by saying, "he knew in his heart of hearts that it was the right thing to do." (Dkt. # 237 at 20). Because a prosecutor may not vouch for the credibility of a witness, the statements were clearly improper. See United States v. Dandy, 998 F.2d 1344, 1353 (6th Cir. 1993) (finding that "it was improper to state that [the witness] is honest"). However, the statements were not flagrant because they were isolated rather than part of a series of improper statements and because the evidence of guilt was overwhelming. Additionally, the statements did not mislead the jury because the Court gave a curative instruction immediately following the statements, and it is presumed that the jury will follow such curative instructions. See United States v. Moreno, 933 F.2d 362, 368 (6th Cir. 1991).

Though the statements were not flagrant, the Court must still determine whether a new trial is nevertheless warranted. As stated above, proof of the defendant's guilt was overwhelming. Additionally, defense counsel did not object, and the Court cured the impropriety with an admonition to the jury. Therefore, Petitioner's counsel was not ineffective for failing to include prosecutorial misconduct as an issue on appeal.

**B. Ineffective Assistance of Trial Counsel**

Petitioner's final argument is that his trial counsel was ineffective prior to and during trial. Specifically, Petitioner argues that counsel failed to properly investigate and present evidence that would have impeached the credibility of Quintana, and failed to investigate and call Jackson, a codefendant, as a witness.

It is well established that the pre-trial period is a critical stage, at which Petitioner is entitled to have effective assistance of counsel. Mitchell v. Mason, 325 F.3d 732, 743 (6th Cir. 2003). During the pre-trial period, trial counsel has a duty to investigate, but that duty is not absolute. Goldsby v. United States, 152 F. App'x 431, 435 (6th Cir. 2005). In order to discharge such duty, counsel must "make reasonable investigations or [] make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691; Jells v. Mitchell, 538 F.3d 478, 491 (6th Cir. 2008). In assessing counsel's performance, the Court must decide whether the investigation supporting counsel's decision not to present evidence impeaching Quintana or to call Jackson was reasonable, not whether counsel should have actually presented the evidence. Id. The court must look at counsel's perspective at the time investigative decisions are made, and must give a heavy measure of deference to counsel's judgments. Rompilla v. Beard, 545 U.S. 374, 381 (2005).

Trial counsel's decisions about what evidence to present and whether to call a particular witness are matters of trial strategy, especially when counsel is aware of the potential witnesses and the substance of their testimony. See Hutchison v. Bell, 303 F.3d 720, 749 (6th Cir. 2002). Additionally, strategic choices "are not constitutionally

10

deficient if a reasonable professional judgment supports the limitations on investigation." Goldsby, 152 F. App'x at 435-36.

### 1. Impeachment Evidence

In the instant matter, Petitioner first argues that his trial counsel was ineffective because he did not request a continuance to investigate and present evidence to impeach Quintana, the key government witness. Petitioner claims that the evidence would have shown that Quintana was in Cleveland in March 2005, which would disprove Quintana's testimony that he was only in Cleveland in January 2005, and that he met Petitioner in March 2005 in Tucson. However, the Court found, and the Sixth Circuit agreed, that Quintana's credibility had already been "fatally damaged" by trial counsel, and that any additional impeachment with the newly discovered evidence would merely have been cumulative. (Dkt. # 219 at 11-13). Therefore, requesting a continuance to investigate the evidence would not have been productive. See Johnson v. Bell, 525 F.3d 466, 487 (6th Cir. 2008) (finding that counsel was not ineffective for not requesting a continuance when it was not apparent that "any such delay would have been productive"). Additionally, trial counsel was aware that Quintana was going to be a witness and was familiar with the substance of his testimony. Therefore, the Court must assume that his decision not to present evidence of Quintana's trip to Cleveland was part of his trial strategy.

### 2. Edward Jackson as a Witness

Petitioner also argues that his counsel was ineffective at trial for failing to call Jackson as a witness. Petitioner has submitted an affidavit from Jackson dated August

11

31, 2009, in which Jackson states that Petitioner was not aware of Jackson's prior conversations with Quintana about the sale of marijuana, and that he would have testified to this at trial.  (Dkt. # 237 at 28).  The government argues that because it was implausible Jackson would have testified on behalf of Petitioner and incriminated himself, it was reasonable to forgo an investigation of Jackson.

While counsel's duty to investigate is not absolute, counsel does have a duty to interview witnesses who may have information concerning the guilt or innocence of the defendant, including codefendants.  Covington v. Mills, No. 1:97-0013, 2005 U.S. Dist. LEXIS 33022, at *28-*29 (M.D. Tenn. Sept. 9, 2005).  The Sixth Circuit has found a failure to investigate a potentially important witness to be objectively unreasonable where, without having contact with the witness, counsel was "ill equipped to assess his credibility or persuasiveness," and thus could not make a fully informed decision about whether to call the particular witness.  Towns v. Smith, 395 F.3d 251, 259-60 (6th Cir. 2005) (internal citations omitted).  See also Bryant v. Scott, 28 F.3d 1411, 1419 (5th Cir. 1994) (finding failure to investigate codefendant unreasonable because "although factors tending to diminish [his] credibility might support a strategic decision not to call [him] at trial, those considerations do not suggest that [counsel's] total failure to investigate [codefendant's] testimony was a strategic decision").

In the instant matter, Petitioner argues that Jackson "was not interviewed or called by defense counsel," and would have provided exculpatory evidence.  (Dkt. # 237 at 24). Jackson's affidavit similarly alleges that defense counsel never contacted him.  Granted, the record does not reflect that Petitioner's counsel made any attempt to contact Jackson.

However, it is nothing more than conjecture to assume that Jackson's counsel would have allowed Petitioner's counsel to interview his client, the co-defendant in this case.

Even assuming trial counsel's performance was deficient for his failure to investigate Jackson, Petitioner must also show prejudice.  In the instant matter, Petitioner cannot do so.  Jackson's statement in his affidavit claiming to have been willing to testify on behalf of Petitioner is an afterthough.  It is extremely implausible that Jackson would have been willing to incriminate himself, presumably against his own counsel's advice, to exculpate Petitioner without being granted immunity.  See Goldsby, 152 F. App'x at 436 (finding it to be improbable that witness would have incriminated herself).  Additionally, if Jackson had testified, there is not a reasonable probability that the outcome of the proceedings would have been different.  Even if Jackson had insisted on taking the stand, the other overwhelming evidence used to convict Petitioner leaves only a minimal possibility that the jury would have been moved by Jackson's testimony to acquit Petitioner.  Therefore, even assuming counsel's performance was deficient for not attempting to interview Jackson, Petitioner cannot show prejudice because there is no reasonable probability that the outcome of the trial would have been different for Petitioner.

**C. Evidentiary Hearing**

Petitioner maintains that he is entitled to an evidentiary hearing.  An evidentiary hearing is required unless the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief.  Moore v. United States, 649

F. Supp. 2d 689, 694 (N.D. Ohio 2009) (quoting Bryan v. United States, 721 F.2d 572, 577 (6th Cir. 1983)).

A hearing is not necessary if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.  Valentine v. United States, 488 F.3d 325, 333 (6th Cir. 2007).  In the instant matter, Petitioner is not entitled to an evidentiary hearing.  The § 2255 Motion and records conclusively establish that Petitioner is not entitled to relief.

## IV. CONCLUSION

For the forgoing reasons, Matthews' Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 is hereby **DENIED**.  (Dkt. # 237).

Finally, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability.  28 U.S.C. §2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED.**

                              **/s/ Peter C. Economus – September 21, 2010**
                              **PETER C. ECONOMUS**
                              **UNITED STATES DISTRICT JUDGE**